TATE, Judge.
This is a suit on an open account for repair services and replacement parts. The defendant appeals from adverse judgment.
The plaintiff Fontenot owns a diesel motor repair service. On November 4, 1965, a truck owned by the defendant Langston was repaired by the plaintiff. After certain minor mechanical repairs had been performed, Langston’s truck proceeded about 40 miles and then suffered a serious engine breakdown. The principal issue of this litigation is raised by Langston’s contention that the serious breakdown was caused by the plaintiff Fontenot’s malper-formance of the earlier repairs. (Lang-ston had authorized both repair jobs.)
The initial minor repair involved the replacement of six diesel fuel injectors. The serious engine breakdown resulted when an injector push rod knocked a hole in the engine block. The rod had either come loose during the operation of the truck (without fault attributable to anyone) or else had been displaced from its socket by the plaintiff Fontenot when he replaced the injectors. (The latter are attached to the top of the push rods.)
Pointing out that the diesel truck ran only 40 miles after Fontenot’s repairs, the defendant Langston strongly argues that Fontenot’s dereliction in the initial repair work has been sufficiently proved to be the most probable cause of the serious engine breakdown. The defendant in part relies upon Fontenot’s admitted failure to inspect the positioning of the push rods, after he had removed the defective injectors and then replaced them with rebuilt injectors.
Both Fontenot and another expert diesel repairman of the area testified that, when injectors are replaced, it is not the usual workmanlike practice to check the positioning of the push rods deep inside the engine. *702 They point out that, when the motor is tested by running it after the new injectors are placed, then at that time any malpositioning of the push rods in the sockets far beneath the injectors can be detected by inspection of the injectors and attached push rods in action.
We find no error in the trial courts determination that a preponderance of the evidence disproves any inadequacy on the part of Fontenot in the first repair job. In this respect, we particularly rely upon the uncontradicted proof to the effect that, on starting the engine after the injectors were reset, any malfunctioning due to improper seating of the push rods would have been apparent, both visually and also due to the engine “missing”. Tr. 68, 76, 80, 111-12.
Fontenot testified without contradiction that he had followed this accepted procedure in testing the motor, having run it for an hour or more. He testified that there was no sign of malfunction at this time. Langston’s truck driver was not produced to contradict this testimony.
(A motion for continuance to take the driver’s testimony and for other reasons was filed and denied on May 22, 1968, the date of the trial. The defendant had secured continuance of an earlier trial fixing for November 27, 1967, set per a minute entry of September 12, 1967. On March IS, 1968, the trial was refixed for May 22nd, when it was actually held. Additionally, a minute entry notes that a pretrial conference was fixed for April 4, 1967. The record does not reflect any attempt to secure the testimony of this employee, either by deposition, interrogatories, or otherwise, until a motion for a second continuance was filed on March 22nd, the date of the trial. The record contains no explanation for the failure to produce this employee or to have attempted to secure his testimony prior to the trial, nor afterwards by a motion at its conclusion to leave the record open for this purpose.)
We find no error in the trial court’s appreciation of the facts as negativing faulty repair work by the plaintiff Fontenot. It is thus unnecessary for us to discuss other causes of the push rods’ malperformance indicated as possible by the evidence. Tr. 80-81; 92-93; 112-13.
We therefore affirm the trial court judgment awarding the plaintiff recovery of $3,214.03 for repairs and parts furnished to the defendant. The defendant-appellant is to pay the costs of this appeal.
Affirmed.